A02A1140. PLANTATION PIPE LINE COMPANY v.
MILFORD et al.
A02A1141. LEVEL 3 COMMUNICATIONS, LLC v. MILFORD et al.
(572 SE2d 67)

ANDREWS, Presiding Judge.

Plantation Pipe Line Company (Plantation), in Case No. A02A1140, and Level 3 Communications, LLC (Level 3), in Case No. A02A1141, appeal from the Gwinnett County trial court's judgment, following a nonjury hearing in plaintiffs' declaratory judgment action, concluding that Plantation had abandoned a portion of its easement over the Hart County properties of the seven plaintiffs.[1] The appeals have been consolidated.

The following facts were not disputed below. Beginning in 1941, Plantation obtained the original 30-foot easement and right-of-way from plaintiffs' predecessors in title and installed a 10-inch petroleum pipeline which originated in Louisiana and continued through Georgia. That pipeline was installed in the center of the 30-foot right-of-way. In 1968, Plantation obtained from plaintiffs' predecessors in title a second 20-foot easement adjacent to the original easement, making the combined easements 50 feet wide, and all parties agreed that a single easement estate was thereby created.

The original easements granted, in pertinent part,

a Right-of-Way and Easement for the purpose of constructing, maintaining, operating, altering, repairing, removing,

---

[7] See *Self v. State*, 232 Ga. App. 735, 736 (2) (503 SE2d 625) (1998).

[1] William D. Milford, George M. Shiflet, Mary Jo Shiflet, Kenneth Skelton, Sara Bond Skelton, Charles G. White, and J. Byron Whitmire.

changing the size of, and replacing pipe for the transportation as a common carrier for hire of oil, crude petroleum and refined petroleum products or combinations thereof or similar thereto, natural and artificial gas, casinghead and natural gasoline and any other liquids or gases, the Grantee to have the right to select the route, under, upon, over and through the lands [property description] with ingress and egress to and from the said Right-of-Way.

The original easements also provided that additional lines of pipe could be installed adjacent and parallel to the original pipeline for additional compensation.

In 1954, Plantation installed a 14-inch line nine feet from the 10-inch line and parallel to it. In 1968, following the addition of the adjacent 20-foot easement, Plantation installed a 26-inch pipeline 15 feet from the other side of the 10-inch line and parallel to it. The 10-inch line operated continuously from its installation until the mid-1970s when it was no longer used for transporting petroleum products. All petroleum product was removed from the 10-inch line using either nitrogen or treated water in order to "protect the integrity of the pipeline." Both the 14-inch and 26-inch pipelines have continuously transported petroleum products.

The 10-inch line, although not transporting petroleum, is used by Plantation for purposes of measuring the 50-foot easement so that Plantation can mow and otherwise maintain it. The 10-inch pipe is located with a Metrotech 810 instrument which bounces radio signals off the pipe. The entire 50-foot easement can then be marked off from this pipe. Plantation personnel walk over the easements in the process of servicing the pipelines, and Plantation mows the entire 50 feet of easement every two years. The easements and pipelines are also inspected weekly by air. Additionally, Plantation signs were placed over the pipelines so that it is possible to stand at one sign and see the next one up the easement so that the lines will not be inadvertently disturbed. The signage and inspections are required by the Hazardous Liquid Pipeline Safety Act, 49 USCA § 60101 et seq.

In the mid-1990s, because the three pipelines were obstructing water flow in a creek running through the Whitmire and Milford properties, Plantation lowered the 14-inch and 26-inch pipelines where they interfered with the flow. Because the 10-inch pipe was not being used at that time to transport petroleum product, Plantation opted to cut and remove the line in the creek and cap the ends. The line was capped to "protect the integrity of the pipeline."

In the late 1990s, Level 3, a telecommunications public utility,

entered into a license agreement with Plantation pursuant to which it has installed fiber optic cable in the 10-inch pipeline.[2]

As testified by Hamilton, the pipeline specialist for Plantation, and acknowledged by plaintiffs' expert consulting engineer, the 10-inch line could be reopened for transporting petroleum products. This would be done by digging up the pipeline, removing the fiber optic cable placed by Level 3, patching the holes in the pipeline through which the cable was installed, cleaning the usable pipe, replacing any pipe which had deteriorated, and putting in new pipe where the old had been removed. Both Hamilton and plaintiffs' consulting engineer agreed that refurbishing the 10-inch line could become economically feasible, depending on the price of petroleum.

Plantation's Right-of-Way Manual also provides a specific procedure for releasing an unused or abandoned right-of-way by which the easement is quitclaimed back to the title holder of the property. That was not done here.

The complaint in this action was filed on May 30, 2000, after which Level 3 filed five condemnation actions against the plaintiffs' properties, seeking condemnation of a telecommunications easement for the fiber optic cable to be placed in Plantation's 10-inch line. On August 30, 2001, the Superior Court of Hart County granted Level 3's motions for partial summary judgment in all five condemnation actions, concluding that telecommunication rights were not contained in Plantation's easement, that the legislature had granted Level 3 the right of eminent domain in order to construct its fiber optic network, and that Plantation and Level 3 had contracted that Level 3 could install its lines within Plantation's easement in exchange for compensation. The Hart County Superior Court further found in each condemnation that "Plantation owns the right to enjoy its easement without interference from the Condemnee and has a further right to contract with Condemnor to use the easement." The Hart County Superior Court left for a special master the amount of compensation due condemnees (plaintiffs here) in return for their retained telecommunication rights.

Both Plantation and Level 3 filed motions for summary judgment below, contending that the matter was not appropriate for a declaratory judgment action, that the condemnation proceedings controlled the issue of Plantation's claimed abandonment of the interior of the 10-inch line, and other grounds. These were denied, the trial court concluding that it was appropriate for declaratory judgment

---

[2] Although identified as Level 3 Exhibit 6 and testified about below, the license agreement was not placed in the record and is not before us.

and that there remained a factual issue regarding Plantation's abandonment.

1. Both Plantation's and Level 3's first enumerations of error are that this matter was not properly considered under the Declaratory Judgment Act. We agree.

"A declaratory judgment is not the proper action to decide all justiciable controversies. To proceed under a declaratory judgment a party must establish that it is necessary to relieve himself of the risk of taking some future action that, without direction, would jeopardize his interests." (Footnotes omitted.) *Porter v. Houghton,* 273 Ga. 407 (542 SE2d 491) (2001).

Where the allegations of the complaint, as here,[3] show that

> the *rights of the parties have already accrued* and no facts or circumstances are alleged which show that an adjudication of the plaintiff[s'] rights is necessary in order to relieve the plaintiffs from the risk of taking any future undirected action incident to their rights, which action without direction would jeopardize their interests, the petition fails to state a cause of action for declaratory judgment. [Cits.]

(Emphasis supplied.) *State Hwy. Dept. v. Ga. Southern &c. R. Co.,* 216 Ga. 547, 548-549 (117 SE2d 897) (1961). See also *Thomas v. Atlanta Cas. Co.,* 253 Ga. App. 199, 202 (2) (558 SE2d 432) (2002).

As plaintiffs acknowledge, in Paragraph 5 of their complaint, "a justiciable controversy exists regarding the parties' rights *based upon an accrued set of facts.*"

Therefore, there was no basis for this declaratory judgment action.

2. Further, even if this matter were appropriate for a declaratory judgment action, the decision made by the trial court regarding whether Plantation abandoned the interior of its 10-inch pipeline was clearly erroneous. *Sadler v. First Nat. Bank &c.,* 267 Ga. 122, 123 (2) (475 SE2d 643) (1996).

(a) Plantation's easement is an express one acquired by grant. The law does not favor extinguishment easements, and "an easement acquired by grant is not extinguished by nonuse without clear, unequivocal and decisive evidence of an intent to abandon the easement. *Hardigree v. Hardigree,* 244 Ga. 830, 831 (2) (262 SE2d 127) (1979)." *Eagle Glen Unit Owners Assn. v. Lee,* 237 Ga. App. 240, 242-243 (1) (514 SE2d 40) (1999). See also *Sadler,* supra; *Jakobsen v. Colonial*

---

[3] The complaint seeks to have the court determine "that the placement of fiber optic telecommunications cable inside an idle Plantation pipe effects a legal abandonment of the easement rights acquired from the Plaintiffs."

*Pipeline Co.*, 260 Ga. 565, 567 (3) (397 SE2d 435) (1990); *Strozzo v. Coffee Bluff Marina &c.*, 250 Ga. App. 212, 214 (1) (b) (550 SE2d 122) (2001).

Aside from the fact that Plantation granted a license to Level 3 to do what Level 3 had the right to do by condemnation anyway regarding use of the 10-inch line, there is no evidence of any intent by Plantation to do anything but use and maintain its entire easement, including the 10-inch line.

(b) The trial court cites no authority for the proposition that an express easement may be partially abandoned. We have found none, but there is ample authority to the contrary. *Muggridge v. State Hwy. Dept.*, 229 Ga. 670, 672 (1) (193 SE2d 849) (1972); *State Hwy. Dept. v. Strickland*, 214 Ga. 467, 471 (3) (105 SE2d 299) (1958); *Martin v. Hall County*, 134 Ga. App. 775, 777 (2) (216 SE2d 655) (1975).

Both Plantation and Level 3 were entitled to judgment in their favor.

3. Our decisions in Divisions 1 and 2 make consideration of the remaining enumerations of Plantation and Level 3 unnecessary.

*Judgments reversed. Phipps and Mikell, JJ., concur.*

DECIDED OCTOBER 3, 2002.

*Fellows, Johnson & La Briola, Henry D. Fellows, Jr., Kevin P. Weimer*, for appellant (case no. A02A1140).

*Womble, Carlyle, Sandridge & Rice, Carl L. Meyer*, for appellant (case no. A02A1141).

*Chandler & Britt, Luther H. Beck, Jr.*, for appellees.

