Melton, Justice.
On December 9, 2010, the City of Sandy Springs and two individual homeowners, John E. Balsam and Jerry Burnstein (collectively Sandy Springs) filed suit against Fulton County, its Board of Commissioners, and its Director of Public Works. Specifically, Sandy Springs filed a petition for declaratory judgment, mandamus, and injunctive relief in which it asked the trial court to determine that Fulton County retained ownership of and responsibility for two drainage retention ponds and a dam located within Sandy Springs. On June 21, 2013, following a bench trial, the trial court found in favor of Sandy Springs, and Fulton County now appeals, contending that it is prohibited from maintaining the detention ponds pursuant to the Georgia Constitution. For the reasons set forth below, we affirm in part and reverse in part.
The record shows that, in 1976, the land that is now Sandy Springs was a part of unincorporated Fulton County. As a result of drainage problems in and around Arlington Cemetery, several homeowners threatened Fulton County with a lawsuit. As part of the negotiations with the homeowners, Fulton County agreed to construct two detention ponds on the grounds of Arlington Cemetery. To accomplish this goal, Fulton County was granted two easements in order to build and maintain the water detention ponds. One easement grants the “right to erect, construct, reconstruct, replace, remove, maintain and use on said described property a dam and detention pond as [Fulton County] shall from time to time require as part of the public drainage system.” The easements “further grant[ ] to [Fulton County] the right of ingress to and egress from said described easement property over and across the land.”[1] In addition to these easements, Fulton County also condemned a small parcel of land to enable construction of the ponds.
On December 1, 2005, Sandy Springs came into existence pursuant to House Bill 37 of the Georgia General Assembly. Some time thereafter, homeowners began experiencing water problems which were traced back to the detention ponds at Arlington Cemetery. The dam and ponds were in disrepair and, apparently, had been wholly neglected for a long period of time. Testimony indicated that, until the drainage problems recurred, both Sandy Springs and Fulton County may have forgotten about the existence of the drainage ponds. It is *17 undisputed that Fulton County still owns the easements in question, and it has done nothing to transfer them. Based on these facts, the trial court granted Sandy Springs’s petition, finding that Fulton County retained an obligation to maintain the dam and ponds it built. We agree.
As a general rule, “the holder of an easement is responsible for repairs to the easement when the use of the easement is impaired due to lack of maintenance.” Equitable Life Assurance v. Tinsley Mill Village, 249 Ga. 769, 771 (1) (294 SE2d 495) (1982). Moreover, the easements in question explicitly enable maintenance to be performed by Fulton County. Under these circumstances, the trial court properly ruled that, as long as the easements are held by Fulton County, it has the responsibility to maintain them.
Fulton County nonetheless contends that it is prohibited from maintaining the easements by Article IX, Section II, Paragraph III of the Georgia Constitution, which provides:
(a) In addition to and supplementary of all powers possessed by or conferred upon any county, municipality, or any combination thereof, any county, municipality, or any combination thereof may exercise the following powers and provide the following services . . . : (6) Storm water and sewage collection and disposal systems. . . . (b) Unless otherwise provided by law, (1) No county may exercise any of the powers listed in subparagraph (a) of this Paragraph or provide any service listed therein inside the boundaries of any municipality or any other county except by contract within the municipality or county affected. . . .
Fulton County’s reliance on this constitutional provision is misplaced. Fulton County is not being required to provide Sandy Springs with an ongoing “storm water and sewage collection and disposal system” in the absence of an intergovernmental contract. As it stands right now, Fulton County continues to own the easements. Until its easement is legally transferred, terminated, or abandoned, Fulton County is merely being required to maintain those structures it previously decided to build.[2]
Fulton County also argues that its easement to build and maintain the ponds and dam were automatically terminated by the *18 creation of Sandy Springs. To support this argument, Fulton County points to statutory provisions which automatically transfer ownership of roads and rights of way to new municipalities. See OCGA § 36-36-7. As Fulton County concedes, however, this statutory provision does not encompass property interests generally. Indeed, property such as parks and public buildings must be separately transferred from one entity to the other. See OCGA § 36-31-11.1. Fulton County has pointed out no statute or law which would indicate that an easement over private property automatically terminates when a city has been created.[3]
We note that, in a supplemental brief, Fulton County contends that it has abandoned the easements. Fulton County did not raise the issue of abandonment in its enumerations before this Court, and it stressed at oral argument that its contentions were constitutionally based. Fulton County did raise an abandonment argument in a motion for summary judgment below. The trial court, in its order on the summary judgment motion, rejected Fulton County’s abandonment argument. The trial court did so by citing Whipple v. Hatcher, 283 Ga. 309, 310 (658 SE2d 585) (2008), for the proposition that “an easement acquired by grant is not extinguished merely by nonuse; there must be clear, unequivocal, and decisive evidence of an intent to abandon the easement.” At the subsequent bench trial, Fulton County did not argue abandonment. Therefore, to the extent that it now attempts to argue that its past conduct constitutes abandonment, this issue is waived for purposes of this appeal.
Under the present circumstances of this case, we find that Fulton County retains current ownership of and responsibility for the easements it holds over the dam and retention ponds located in Sandy Springs. As stated previously, however, any concomitant responsibility continues only until the easements at issue are legally transferred, terminated, or prospectively abandoned. As a result, to the extent that the trial court’s order may be read to indicate that Fulton County has to maintain the easements in perpetuity, it must be reversed.

Judgment affirmed in part and reversed in part.

All the Justices concur, except Benham, J., who dissents.

 Both easements grant similar rights.

 Fulton County vehemently argues that its rights under the easement are not exclusive; therefore, it should not he exclusively required to maintain the ponds and dam. This argument misses the mark. Fulton County decided to exercise its right to build the dam and the ponds, and it must currently maintain the structures.

 Although an easement may terminate by operation of law when there has been a merger of the dominant and servient estate, there has been no such merger in this case. “[WJhere there is a union of an absolute title to and possession of the dominant and servient estates in the same person, it operates to extinguish any such easement absolutely and forever, for the single reason that no man can have an easement in his own land. [Cits.]” (Punctuation omitted) Muscogee Mfg. Co. v. Eagle & Phenix Mills, 126 Ga. 210, 218-219 (54 SE 1028) (1906).